UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NOMAN NASAR,<br><br>Petitioner,<br><br>v.<br><br>WARDEN OF THE CALIFORNIA CITY DETENTION CENTER,<br><br>Respondent. | No. 2:26-cv-00433-DC-AC (HC)<br><br>ORDER GRANTING IN PART PETITIONER'S MOTION FOR A TEMPORARY RESTRAINING ORDER<br><br>(Doc. No. 2) |

This matter is before the court on Petitioner Noman Nasar's motion for a temporary restraining order (Doc. No. 2), filed in conjunction with his petition for a writ of habeas corpus brought under 28 U.S.C. § 2241, challenging his ongoing immigration detention. (Doc. No. 1.) For the reasons explained below, the court will grant in part Petitioner's motion for a temporary restraining order.

**BACKGROUND**

**A.     Factual Background**

Petitioner Noman Nasar is a native and citizen of Pakistan who entered the United States on or about January 3, 2025. (Doc. No. 8 at 2.) Petitioner was detained by the U.S. Department of Homeland Security ("DHS") upon entry and has been in DHS custody since that date. (Doc. No. 2 at 2.) Petitioner is currently detained at the California City Detention Center, in California City, California. (*Id.*) The parties agree that Petitioner is detained under the mandatory detention

1

authority of 8 U.S.C. § 1225(b)(1). (Doc. Nos. 2 at 2; 8 at 1.)

On June 9, 2025, Petitioner was provided a custody redetermination hearing with an immigration judge pursuant to 8 C.F.R. § 1236. (Doc. No. 8-2.) The immigration judge denied Petitioner's request for custody redetermination, finding that Petitioner was a flight risk. (*Id.* at 1.) No explanation was provided for this finding. Petitioner did not appeal that ruling and has not been provided with another custody redetermination hearing since that date. (Doc. No. 11 at 2.)

**B.      Procedural Background**

On February 13, 2026, Petitioner filed his habeas petition asserting that Respondent Warden of the California City Detention Center violated his right to due process by detaining him for a prolonged period without a bond hearing. (Doc. No. 1 at 6.) By his petition, Petitioner seeks his immediate release pending resolution of his immigration proceedings, or in the alternative, a bond hearing where the government bears the burden of justifying his continued detention. (*Id.* at 8.) On that same day, Petitioner filed the pending motion for a temporary restraining order in which he argues that his continued detention "exceeds beyond a reasonable period of confinement" and that he has been deprived of "judicial review of [his] detention before a neutral decision maker." (Doc. No. 2 at 2.) Petitioner seeks the same relief in his motion for a temporary restraining order as in his habeas petition. (*Id.* at 8.)

On February 20, 2026, Respondent timely filed his opposition to Petitioner's motion for a temporary restraining order. (Doc. No. 8.) In his opposition, Respondent argues that Petitioner is subject to mandatory detention without a bond hearing pursuant to 8 U.S.C. § 1225(b)(1)(A)(i), and that, contrary to Petitioner's allegations, Petitioner did receive a bond hearing on June 9, 2025, and is not entitled to another. (Doc. No. 8 at 1–2.)

On March 9, 2026, Petitioner filed his reply in which he concedes that he was provided a bond hearing in June 2025 but argues that the government did not present clear and convincing evidence of his flight risk or danger to the community at that hearing, and that his continued detention remains unreasonably prolonged in violation of his right to due process. (Doc. No. 11 at 2.)

/////

**LEGAL STANDARD**

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citation omitted). The standard governing the issuing of a temporary restraining order is "substantially identical" to the standard for issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). To obtain either form of injunctive relief, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in favor of the moving party; and (4) that an injunction is in the public interest. *Winter*, 555 U.S. 7, 20 (2008). The likelihood of success on the merits is the most important *Winter* factor. *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017).

A party seeking injunctive relief must make a showing on all four prongs of the *Winter* factors to obtain injunctive relief. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011); *see Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) ("A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'") (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). A district court may consider "the parties' pleadings, declarations, affidavits, and exhibits submitted in support of and in opposition to the [motion for injunctive relief]." *Cal. Rifle & Pistol Ass'n, Inc. v. L.A. Cnty. Sheriff's Dep't*, 745 F. Supp. 3d 1037, 1048 (C.D. Cal. 2024); *see also Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009). Any evidentiary issues "properly go to weight rather than admissibility." *Am. Hotel & Lodging Ass'n v. City of Los Angeles*, 119 F. Supp. 3d 1177, 1185 (C.D. Cal. 2015).

**DISCUSSION**

**A.      Likelihood of Success on the Merits**

Petitioner contends that, although he is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(1), his fourteen-month "detention now exceeds beyond a reasonable period of

confinement" in violation of the "constitution[al] protections extended to me under *Zadvydas[1]* and *Rodriguez[2]* where [six] months serves as" the period of time that immigration detention is presumptively reasonable. (Doc. No. 2 at 2.)

In his opposition, Respondent argues that Petitioner is subject to mandatory detention under § 1225, and that he is not entitled to any bond hearing under that statute. (Doc. No. 8 at 1.) Respondent further argues that, despite not being entitled to a bond hearing, Respondent received a bond hearing in June 2025, where the immigration judge determined Petitioner was a flight risk and denied his request for bond. (*Id.* at 2.) Respondent argues that Petitioner was not entitled to a bond hearing in the first instance, and he is not entitled to a second bond hearing now. (*Id.*)

In his reply, Petitioner admits that he received a bond hearing in June 2025 but argues that

---

[1] In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court considered the constitutionality of mandatory detention for noncitizens with a final order of removal pursuant to 8 U.S.C. § 1231(a). The Supreme Court recognized that a "statute permitting indefinite detention of an alien would raise a serious constitutional problem" under the Fifth Amendment Due Process Clause. *Zadvydas*, 533 U.S. at 690. Accordingly, the Supreme Court held that after a presumptively reasonable six-month period of post-removal period detention, a noncitizen must be released if he demonstrates that there is "good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701.

[2] In *Rodriguez v. Robbins* (*Rodriguez II*), 715 F.3d 1127 (9th Cir. 2013), the Ninth Circuit applied the logic of *Zadvydas* to noncitizens subject to mandatory detention during removal proceedings, including those detained pursuant to § 1226(b)(1). The court in *Rodriguez II* determined that, although mandatory detention is not constitutionally impermissible *per se*, "the statute cannot be read to authorize mandatory detention of criminal aliens with no limit on the duration of imprisonment." *Rodriguez II*, 715 F.3d at 1137. Thus, the court in *Rodriguez II* found that the mandatory detention language "must be construed 'to contain an implicit reasonable time limitation, the application of which is subject to federal-court review,'" and adopted the same six-month period provided in *Zadvydas*. *Id.* at 1138 (quoting *Zadvydas*, 533 U.S. at 690). In *Jennings v. Rodriguez*, 583 U.S. 281 (2018), the Supreme Court found that in *Rodriguez II*, the Ninth Circuit "erroneously concluded that periodic bond hearings are required" under § 1226, but noted that the Court "had no occasion to consider respondents' constitutional arguments on the merits" and "remand[ed] the case to the Court of Appeals to consider [the constitutional claims] in the first instance." *Jennings*, 583 U.S. at 312. On remand, the Ninth Circuit emphasized that the Supreme Court "declined to reach the constitutional question" of whether a noncitizen may be detained indefinitely under mandatory detention authority and then remanded the case to the district court for further proceedings. *Rodriguez v. Marin* (*Rodriguez III*), 909 F.3d 252, 255 (9th Cir. 2018). Thus, there is no binding authority in this court governing whether due process requires that a noncitizen be provided a bond hearing after being detained for a prolonged period under § 1226(b)(1), and if so, when that bond hearing is necessary.

4

he is entitled to another because the government did not present clear and convincing evidence that Petitioner presented a flight risk,[3] and because he remains in prolonged detention following that initial hearing with no possibility of release. (Doc. No. 11 at 1–2.)

Both the Ninth Circuit and Supreme Court have expressed reservations as to whether a noncitizen may be detained for an unreasonably prolonged period, even where they are detained pursuant to a statute requiring their mandatory detention. *See Rodriguez III*, 909 F.3d at 256 ("We have grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so."); *Demore v. Kim*, 538 U.S. 510, 532 (2003) (Kennedy, J., concurring) ("[S]ince the Due Process Clause prohibits arbitrary deprivations of liberty, a lawful permanent resident alien such as respondent could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified."). While neither the Ninth Circuit nor the Supreme Court have endorsed a bright-line rule for when a noncitizen's detention becomes constitutionally impermissible, "[n]early all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at some point—violate the right to due process." *Toktosunov v. Wamsley*, No. 2:25-cv-01724-TL, 2025 WL 3492858, at *3 (W.D. Wash. Dec. 5, 2025) (quoting *Maliwat v. Scott*, No. 25-cv-00788-TMC, 2025 WL 2256711, at *3 (W.D. Wash. Aug. 7, 2025)).

As Respondent notes, Petitioner's case differs from the district court cases cited above because Petitioner *has* received a bond hearing at which his eligibility for bond was considered. (Doc. No. 8-2.) However, several courts in the Ninth Circuit have found that due process requires a second bond hearing when a noncitizen subject to mandatory detention has been held for a prolonged period following the initial bond determination. *See, e.g., Martinez v. Jaddou*, No.

---

[3] As Respondent notes in his opposition, Petitioner did not appeal the immigration judge's determination to the Board of Immigration Appeals ("BIA"), therefore he did not exhaust his administrative remedies before filing his petition. (Doc. No. 8 at 2.) The court agrees that the question of whether sufficient evidence supported the immigration judge's determination is not properly before the court and does not consider that question here.

2:24-cv-01960-TSZ-BAT, 2025 WL 1870828, at *3 (W.D. Wash. June 5, 2025), *report and recommendation adopted as modified by Martinez v. Alfonso-Royals*, 2025 WL 1866085 (W.D. Wash. July 7, 2025) (finding that the noncitizen petitioner who was subject to mandatory detention under 1226(c) was nonetheless entitled to a second bond hearing where five years had passed since first bond hearing); *Sahota v. Allen*, No. 20-cv-03180-WHO, 2020 WL 2992872, at *6 (N.D. Cal. June 4, 2020) (same as to detainee who sought second bond hearing after almost two years); *Rajnish v. Jennings*, No. 3:20-cv-07819-WHO, 2020 WL 7626414, at *1 (N.D. Cal. Sept. 30, 2019) (same as to detainee who sought second bond hearing after nine months).

Thus, the court must determine whether the nine-month period between Petitioner's initial bond hearing and his filing of his petition has become unconstitutionally prolonged. In so determining, the court must answer two questions: (1) "whether there exists a protected liberty interest under the Due Process Clause," and (2) "the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Mohammed v. Warden of Cal. City Det. Ctr.*, No. 1:26-cv-00188-DJC-CSK, 2026 WL 192368 at *2 (E.D. Cal. Jan. 26, 2026) (citing *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025)).

As to the first question, noncitizens maintain a well-established liberty interest in their freedom from detention. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). Petitioner has been continuously detained by ICE since he crossed the U.S. border in January 2025. (Doc. No. 2 at 2.) Further, because Petitioner asserted a credible fear of removal to Pakistan, he is no longer in expedited removal proceedings. (Doc. No. 8 at 2.) Petitioner alleges, and Respondent does not dispute, that his immigration "proceedings have been changed on multiple occasions at the accord of DHS, through no fault of [his] own," resulting in his substantially prolonged detention. (Doc. No. 2 at 2.) Thus, it is uncertain when Petitioner will be removed or released from immigration detention. As Petitioner has been deprived of his constitutional right to liberty, and as there is no indication that Petitioner's liberty will be secured pursuant to the protections provided to him in the INA, Petitioner has an established liberty interest. *See Zadvydas*, 533 U.S. 690, 693.

As to the second question, the courts that have considered what process is due to

noncitizens who have had prolonged periods of detention following an initial bond hearing have employed the three-factor test established in *Mathews v. Eldridge,* 424 U.S. 319 (1976), to make that determination. *See Martinez*, 2025 WL 1870828 at *3; *Rajnish*, 2020 WL 7626414 at *8; *Sahota*, 2020 WL 2992872 at *5. The court agrees that the *Mathews* analysis is proper; the Ninth Circuit has identified that analysis as "a flexible test that can and must account for the heightened governmental interest in the immigration detention context." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1207 (9th Cir. 2022).

The *Mathews* analysis "generally requires consideration of three distinct factors" to determine the specific dictates of due process. *Rodriguez*, 53 F.4th at 1207 (citing *Mathews*, 424 U.S. at 334–35). Those factors are:

> *First*, the private interest that will be affected by the official action; *second*, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and *finally*, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* Here, Petitioner has a substantial private interest in being provided with a renewed procedure by which he can argue for his release pending removal proceedings. Petitioner has been detained for over fourteen months and has not been provided with the opportunity to argue for his release in the last nine months. (Doc. No. 2.) Nor does it seem likely that Petitioner will be afforded that opportunity given that Respondent maintains the Petitioner is subject to mandatory detention and is not entitled to such a hearing. (Doc. No. 8 at 1.) Further, Petitioner's removal proceedings have been repeatedly continued despite Petitioner's objections. (Doc. No. 2 at 2.) Moreover, courts within the Ninth Circuit have found that immigration detainees subject to similar periods of detention between bond hearings are entitled to a new bond hearing on due process grounds. *See Rajnish*, 2020 WL 7626414 at *10 ("For clarity, I do not hold that [the petitioner] is entitled to a new hearing [nine months after his initial bond hearing] merely because more than six months have passed. Instead, I apply *Mathews* and hold that, on these facts, this is the process due to [the petitioner].") Thus, the first factor weighs heavily in Petitioner's favor.

The second factor, the risk of an erroneous deprivation of Petitioner's liberty interest, also

7

weighs heavily in Petitioner's favor. Civil immigration detention is "nonpunitive in purpose and effect," and is not justified where a petitioner is not a flight risk or a danger to the community. *Zadvydas*, 533 U.S. at 690. While an immigration judge did previously determine that Petitioner was a flight risk, the judge did not indicate what facts informed that determination, such that the court cannot determine whether any additional or new evidence may be considered in a subsequent bond hearing. (Doc. No. 8-1.) However, in initial bond determinations, the BIA has held that the burden of persuasion is on the petitioner to show that he is neither a flight risk nor a danger to the community. *See Matter of Adeniji*, 22 I. & N. Dec. 1102 at 1112 (citing 8 C.F.R. § 236.1(c)(8)). When a bond redetermination is required on constitutional grounds, on the other hand, numerous courts within the Ninth Circuit have found that due process requires the government to justify the petitioner's continued detention by clear and convincing evidence. *See Ixchop Perez v. McAleenan*, 435 F. Supp. 3d 1055, 1062 (N.D. Cal. 2020) (collecting cases). The court will join these courts and order that in Petitioner's renewed bond hearing, the government bears the burden to justify Petitioner's continued detention by clear and convincing evidence. Therefore, while Petitioner has had an initial bond hearing pursuant to regulation, no neutral arbiter has determined whether Petitioner's continued prolonged detention is constitutionally permissible under this higher standard. Therefore, the second factor also weighs heavily in Petitioner's favor.

Finally, Respondent's interest in Petitioner's continued detention without a second bond hearing is low. As noted above, the only permissible reason for Petitioner's continued detention is his risk of flight or danger to the community. *Zadvydas*, 533 U.S. at 690; *see also Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) ("[T]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by a lesser bond or alternative conditions."). Respondent does not provide any argument as to why providing Petitioner with a bond hearing would be particularly burdensome, or why Petitioner's continued detention is necessary. Accordingly, the third factor also weighs heavily in Petitioner's favor.

Because all three *Mathews* factors weigh heavily in Petitioner's favor, the court finds that

8

there is a substantial likelihood that Petitioner will succeed on the merits of his claim that he is constitutionally entitled to a bond hearing.

**B.      Irreparable Harm**

A party seeking preliminary injunctive relief must make a "clear showing" of a likelihood of irreparable harm in the absence of the relief requested. *Winter*, 555 U.S. at 22. The "Ninth Circuit has recognized the 'irreparable harms imposed on anyone subject to immigration detention' including 'subpar medical and psychiatric care in ICE facilities.'" *Hoac v. Becerra*, No. 2:25-cv-01740-DC-JDP, 2025 WL 1992771, at *3 (E.D. Cal. July 16, 2025) (quoting *Hernandez v. Sessions*, 872 F.3d 976, 994-95 (9th Cir. 2017)).

Here, Petitioner is likely to succeed on the merits of his claim that his detention constitutes an ongoing violation of his constitutional right to due process, which alone is sufficient to demonstrate irreparable harm. *Nelson v. Nat'l Aeronautics & Space Admin.*, 530 F.3d 865, 882 (9th Cir. 2008) (*rev'd on other grounds,* 562 U.S. 134 (2011)) ("Unlike monetary injuries, constitutional violations cannot be adequately remedied through damages and therefore generally constitute irreparable harm.").

Respondent does not address the issue of irreparable harm in his opposition. Having considered the irreparable harm identified by Petitioner, the court finds the second *Winter* factor weighs in favor of granting Petitioner's request for injunctive relief, specifically Petitioner's request that he be provided a bond hearing.

**C.      Balance of Equities and Public Interest**

The court now turns to the last two *Winter* factors. The balance of equities and public interest analyses merge when the government is the opposing party, as is the case here. *See Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

Despite any interest the government may have in promptly executing removal orders, "our system does not permit agencies to act unlawfully even in pursuit of desirable ends." *Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 594 U.S. 758, 766 (2021) (citing *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 582 (1952)). Further, that Petitioner has shown a likelihood of

success on the merits tips the public interest further in his favor. *Riley's Am. Heritage Farms v. Elasser*, 32 F.4th 707, 731 (9th Cir. 2022).

Therefore, the third and fourth *Winter* factors also weigh in favor of granting Petitioner's request for injunctive relief. Because all four *Winter* factors weigh in Petitioner's favor, the court finds that injunctive relief is warranted and will grant in part Petitioner's motion for a temporary restraining order.

**D.    Security**

Federal Rule of Civil Procedure 65(c) permits a court to grant preliminary injunctive relief "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting Fed. R. Civ. P. 65(c)). "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court with discretion as to the amount of security required, if any.'" *Id*. (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003)). "In particular, '[t]he district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct.'" *Johnson*, 572 F.3d at 1086 (quoting *Jorgensen*, 320 F.3d at 919). Neither party addresses whether bond should issue in their briefing.

The court finds that no security is required here. Courts regularly waive security in cases like this one. *Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011); *Lepe v. Andrews*, No. 25-cv-01163-KES-SKO, 2025 WL 2716910, at *10 (E.D. Cal. Sep. 23, 2025); *Pinchi v. Noem*, No. 25-cv-05632- RMI-RFL, 2025 WL 1853763, at *4 (N.D. Cal. Jul. 4, 2025).

**CONCLUSION**

For the reasons explained above,

1.    Petitioner Noman Nasar's motion for a temporary restraining order (Doc. No. 2) is GRANTED IN PART, as follows:

    a.    Respondent shall, within fourteen (14) days of issuance of this order, provide Petitioner with a bond hearing before an immigration judge at which the government shall bear the burden of justifying Petitioner's

10

continued detention by clear and convincing evidence;

    b.    Petitioner's request for immediate release is denied; and

    2.    This matter is referred to the assigned magistrate judge for further proceedings.

IT IS SO ORDERED.

Dated:   **March 13, 2026**

                    Dena Coggins
United States District Judge

11